Aristoteles LAVDAS, Appellant,

v.

John W. HOLLAND, District Director Immigration and Naturalization Service.

No. 11854.

United States Court of Appeals
Third Circuit.

Argued June 7, 1956.

Decided July 11, 1956.

John S. Manos, Philadelphia, Pa. (Gregory G. Lagakos, Philadelphia, Pa., on the brief), for appellant.

Norman C. Henss, Asst. U. S. Atty., Philadelphia, Pa. (W. Wilson White, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This appeal has been taken from an order of the district court, which granted summary judgment denying an alien petitioner, Aristoteles Lavdas, relief from pending deportation to his native Greece. More particularly, it was petitioner's unsuccessful complaint that a Regional Commissioner of the Immigration and Naturalization Service had arbitrarily and unlawfully determined that petitioner did not qualify as a "displaced person" entitled to adjustment of his immigration status to that of a permanent resident under Section 4 of the Displaced Persons Act of 1948, as amended, 50 U.S.C. Appendix § 1953.

Lavdas found himself in difficulty because after his temporary entry into this country on October 7, 1947 as a nonimmigrant seaman, he long overstayed the brief lawful sojourn to which his status entitled him. Then, to obtain a change of status which would enable him to remain in this country he attempted to bring himself within the protection of the Dis-

placed Persons Act. Section 4 of that Act which he invoked provides as follows:

"(a) Any alien who (1) entered the United States prior to April 30, 1949, * * * and (2) is otherwise admissible under the immigration laws, and (3) is a displaced person residing in the United States * * * may * * * apply to the Attorney General for an adjustment of his immigration status. If the Attorney General shall, upon consideration of all the facts and circumstances of the case, determine that such alien has been of good moral character for the preceding five years and that such alien is qualified under the provisions of this section, the Attorney General shall report to the Congress all of the pertinent facts in the case. If * * * the Congress passes a concurrent resolution stating in substance that it favors the granting of the status of permanent residence to such alien the Attorney General is authorized, * * * to record the admission of the alien for permanent residence as of the date of the alien's last entry into the United States. If * * * the Congress does not pass such resolution, the Attorney General shall thereupon deport such alien in the manner provided by law: * * *

"(b) When used in this section the term 'Displaced Person residing in the United States' means a person who establishes that he lawfully entered the United States as a non-immigrant * * * and that he is a person displaced from the country of his birth, or nationality, or of his last residence as a result of events subsequent to the out-break of World War II; and that he cannot return to any of such countries because of persecution or fear of persecution on account of race, religion or political opinions."

Petitioner's application for change of status under Section 4 was considered and disposed of under procedure duly prescribed by the Attorney General. 8 C.F.R. 171.10–171.11 (1949 ed.); 8 C.F.R. 9.5 a (aaa) (1952 ed.) He was permitted to present evidence in support of his claim before a Special Inquiry Officer who made a report to a Regional Commissioner, recommending that the application be denied. The Regional Commissioner is the officer designated by the Attorney General to decide on the entire record and in all the circumstances of a given case whether the application to remain here as a "displaced person" shall be approved and submitted to Congress as provided in the statute, or denied. No administrative appeal lies from that decision.

In this case the entire record was submitted to and considered by a Regional Commissioner. His dispositive action consisted of a brief finding and decision, reading in its entirety as follows:

"Upon consideration of the entire record and the exceptions filed, it is found that the exceptions are without merit and that the application should be denied, as the alien could return to the country of birth, nationality and last residence without persecution or fear of persecution on account of race, religion or political opinion."

■ That administrative action is the matter under review in the present proceeding. The judicial task is to decide whether the administrative officer acted arbitrarily or in misconception of the law in ruling that Lavdas could return to Greece, the country of his birth, nationality and last residence, without "fear of persecution on account of * * * political opinion". In our view the administrative conclusion, beyond being consistent with the evidence, was the only conclusion which the evidence permitted.

The entire record of the administrative proceeding was before the district court and is before us. First, it appeared that Aristoteles Lavdas was a native of Andros, a tiny island off the southeastern coast of Greece. He was one of ten chil-

dren of a very poor family. He left Andros in 1947 at the age of 18 to accept employment as a merchant seaman and soon thereafter, in the course of that employment, arrived in the United States where he has remained. Poverty was one reason for his leaving home and another was a desire to escape from Communists who in 1946 and 1947 were conscripting young Greeks and carrying them away from their villages.

Second, the record indicates that young Aristoteles was not active publicly or privately in the political struggles and controversies of the times. He was not in any sense a conspicuous figure. Rather, he was a poor country boy trying merely to stay out of trouble. His own testimony before the Special Inquiry Officer makes this clear.

"Q. Have you ever taken any action against the Communists in Greece which leads you to believe that you would be subject to reprisals now if you were to return to that country? A. Every time I saw the Communists I ran away from them. I went far away so I won't look at them at all.

"Q. When did this occur? A. 1946 and 1947."

In these undisputed circumstances the petitioner says that certain letters written in 1949 and 1950 support his contention that he could not return to Greece in 1955 because of fear of persecution on account of political opinion. These letters were in the nature of testimonials written in petitioner's interest by citizens of Andros. Some expressed an opinion, but wholly without mention of any supporting facts, that there was danger at that time of violence by Communists against petitioner if he returned to Andros.

■■ But petitioner's task here has been to show basis for fear of returning to Greece in 1955. Judicial notice may and should be taken that political circumstances in Greece have changed greatly since 1949 and 1950. Certainly they are far from anarchic. In 1955 and 1956 an organized and controlling government exists in Greece. It is not communist dominated and does not sanction communist violence against anti-communists. Another proper subject of judicial notice is that Greece is a considerable country of some eight million inhabitants, while Andros is a very small off-shore island with only one substantial settlement of some three thousand inhabitants.

In these circumstances petitioner's minimal showing of reason to fear return to the little island of Andros in 1949 or 1950 affords no reasonable basis for asserted fear to return to the country of Greece in 1955. Whatever factors may have created apprehension in Andros in 1949, petitioner has not provided basis for an inference that they persist today. Beyond that there is no evidence and no reason to believe that anyone outside of Andros was ever interested in petitioner. It is not credible that an inconspicuous eighteen year old country boy, who was not engaged in politics and whose only political offense was staying out of sight in his home island, would even be known, much less proscribed and made an object of vengeance, throughout Greece. On the record we think no fact finder could reasonably have concluded that petitioner had showed a rational basis for any present fear of returning to Greece.

The factual aspect of the controversy notwithstanding, appellant strongly urges that this proceeding involves and turns upon a mistake of law by the administrative officers who considered his application. He says that the Special Inquiry Officer explicitly and the Regional Commissioner inferentially took the position that the fear of persecution which can create displaced person status must be fear of persecution by or with the sanction of the government of the country in question. He argues that such a conception of the meaning of Section 4 is too restrictive, and that fear of persecution by secretly and illegally operating communist terrorists in the refugee's

homeland may satisfy the requirements of the statute.

 We find it unnecessary to decide this point or to express any opinion upon it. If the evidence would support a factual conclusion that in 1955 appellant had some reasonable basis to fear such persecution by underground forces in Greece, the point would require decision. But we find the conclusion unavoidable that appellant has failed to show any rational basis for even the sort of fear of persecution he tried to establish. That evaluation of the record is enough for the decision of this case.

The judgment will be affirmed.