Justin **LUKMAN**

v.

**J. W. HOLLAND, District Director, Immigration and Naturalization Service.**

**Civ. A. No. 21160.**

United States District Court
E. D. Pennsylvania.

Feb. 19, 1957.

John A. M. McCarthy, Philadelphia, Pa., for plaintiff.

W. Wilson White, U. S. Atty., Jos. J. Zapitz, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

This case is before the court for review under the Administrative Procedure Act, 5 U.S.C.A. § 1009, of agency deportation action, findings, and conclusions alleged to be arbitrary, capricious, an abuse of discretion, and not in accordance with law. The record consists of a complaint, answer, the deportation record of the Immigration and Naturalization Service, and a motion for summary judgment filed by defendant under Fed.Rules Civ.Proc. rule 56, 28 U.S.C.A. The basis of plaintiff's complaint with the agency action is its alleged failure and neglect to "give due weight to the credible evidence of your petitioner, resulting in defendant making a determination that

"(a) 'He (petitioner) is able to return to the country of his last residence.' [1]

"(b) 'He (petitioner) was not lawfully admitted to the United States as a non-immigrant.'

"(c) 'The applicant has failed to establish that he would be subjected to physical persecution if so deported.' " [2]

Plaintiff, a single, male, citizen of Yugoslavia, was born in 1919 in a part of that country which belonged to Italy at the time of his birth. After World War II, he lived in Italy for the last four

---

1. It is not necessary to consider this finding in view of the finding that he entered this country on October 21, 1951, with intent to remain indefinitely (see footnote 4).

2. Paragraph 10 of Complaint. Although this finding is based on substantial evidence (see report of Special Inquiry Officer dated 6/1/55), it is not necessary to consider this finding in order to decide this case.

months of 1945 and entered the Merchant Marines in January 1946.[3] He last entered the United States on October 21, 1951, as a seaman on a Panamanian vessel which was to remain in the ports of this country for a period not to exceed 29 days. He terminated his employment on the vessel and took a shore job within three weeks of his entry. A warrant of arrest for deportation of an alien was served upon him on May 12, 1953, at which time he said to two Service Patrol Inspectors that at the time of his entry into the United States on October 21, 1951, he "intended to settle here and remain for life."[4] After a hearing on this warrant, at which plaintiff was represented by counsel, the Special Inquiry Officer filed a report on July 30, 1953, containing, among others, a finding that plaintiff intended to remain in the United States indefinitely at the time of his entry on October 21, 1951, and an order that he be deported under Section 241 (a) (1) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a) (1), from this country. An appeal from this order to the Board of Immigration Appeals was dismissed on September 18, 1953.

On December 8, 1953, plaintiff filed an application to adjust his immigration status under Section 6 of the Refugee Relief Act of 1953, 50 U.S.C.A. Appendix, § 1971d. A hearing on this application was held on April 20, 1955, and a recommendation was filed by the Examining Officer on June 1, 1955, providing, "It is recommended that the alien's application for adjustment of immigration status under the provisions of Section 6 of the Refugee Relief Act of 1953 be denied for the reason that he is able to return to the country of his last residence."[5] Exceptions were filed to this recommendation and, on July 26, 1955, these exceptions were denied in an order of the Acting Regional Commissioner, Southeast Region, Immigration and Naturalization Service, providing that "the alien's application for adjustment of status under the provisions of Section 6 of the Refugee Relief Act of 1953 be denied on the ground that he was not lawfully admitted to the United States as a non-immigrant."[5]

In August 1955, a motion to reopen these proceedings for adjustment of plaintiff's status under the above-mentioned Section 6 was filed and a hearing on this motion was granted on September 12, 1955. On September 20, 1955, this motion was denied for the reasons stated in the order of July 26, 1955.

On October 11, 1955, Lukman filed an application for stay of deportation under Section 243(h),[6] of the Immigration and Nationality Act, upon which a hearing was held on January 13, 1956. At this hearing (as at all former hearings), petitioner was represented by counsel. On July 6, 1956, the Special Inquiry Officer filed a report recommending that the application for stay of deportation be denied, on the ground that "the applicant has failed to establish that he would be subjected to physical persecution if so deported." On July 23, 1956, the Acting Regional Commissioner entered an order that "the application under Section 243(h) of the Immigration and Nationality Act to withhold deportation to Yugoslavia or Italy be denied."

3. Page 4 of Notes of Testimony of hearing of 1/13/56.

4. Since the Special Inquiry Officer's report of July 30, 1953, finds that this was plaintiff's statement at that time, as well as his intent on October 21, 1951, and since there is ample evidence to support such a finding in the testimony taken July 2, 1953, his subsequent denial of such statement and of such intent is not significant in this proceeding. See Lavdas v. Holland, 3 Cir., 1956, 235 F.2d 955, stating that administrative action must be "arbitrary" to be reversed in such a case.

5. Paragraph 7 of Complaint.

6. This section, 8 U.S.C.A. § 1253(h), provides:

"(h) The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason."

After careful consideration of the testimony offered on July 2, 1953, April 20, 1955 (as summarized in Report of June 1, 1955), and January 13, 1956, plaintiff's contention of illegal agency action will be denied for the reasons summarized under headings of the two basic findings involved.

I. Plaintiff's intent to remain in the United States at the time of his entry on October 21, 1951.

 There is substantial competent and probative evidence [7] to support the finding of the Special Inquiry Officer that plaintiff had this intent and there is no basis in the record to support the contention that this finding and the administrative action taken on the basis of it was arbitrary, capricious, an abuse of discretion, or illegal under the Administrative Procedure Act, 5 U.S.C.A. § 1009. The evidence on this point is quite similar to that before this court in Tsimounis v. Holland, D.C.E.D.Pa.1955, 132 F.Supp. 754, affirmed 3 Cir., 1956, 228 F.2d 907, and in Mascarin v. Holland, D.C., 143 F. Supp. 427, at page 429. Under such circumstances, the plaintiff is in this country illegally (see 228 F.2d at page 908 of opinion of United States Court of Appeals for the Third Circuit in the Tsimounis case, supra) and is not entitled to relief under Section 6 of the Refugee Relief Act, 50 U.S.C.A.Appendix, § 1971d, since he has not established that "he lawfully entered the United States as a bona fide non-immigrant." See United States ex rel. Feretic v. Shaughnessy, 2 Cir., 1955, 221 F.2d 262, 263;[8] Mascarin v. Holland, supra.

II. Plaintiff's being subject to fear of persecution or physical persecution if he returned to Yugoslavia.

A. Possible application of language concerning fear of persecution in Section 6 of the Refugee Relief Act, 50 U.S.C.A.Appendix, § 1971(d).

 The discussion under I above makes any discussion of the following jurisdictional language of the above-mentioned Section 6 unnecessary: "he is unable to return to the country of his birth, or nationality, or last residence because of persecution or fear of persecution on account of race, religion, or political opinion." However, it may be helpful to counsel for aliens subject to similar deportation orders in cases coming before this court in the future to suggest that, if the court is to be asked to rely on news report clippings from newspapers, counsel should make, at the least, some showing that this is the only evidence available. In this case, counsel relies on one sentence in a newspaper report,[9] and such a hearsay state-

---

7. See 8 U.S.C.A. § 1252(b). In addition to the testimony of the two Inspectors (see page 2 above [149 F.Supp. 314]), there is cumulative evidence of a third witness (a Chief Patrol Inspector) that plaintiff could understand and speak the English language on May 12, 1953 (see p. 21 of Notes of Testimony of July 2, 1953). This witness testified that he offered to secure an interpreter for plaintiff, who stated that an interpreter would not be necessary.

8. In the Feretic case, 221 F.2d at page 264, the court said: "His papers were in order as a 'bona fide alien seaman' temporarily here and with the intention of departing at or before the expiration of his leave on the same or some other vessel. In reality, however, his own unequivocal testimony compels a finding that when he left the ship he intended to stay here permanently if he could. Under these circumstances, we have no doubt that his entry was illegal. In effect he perpetrated a fraud upon the immigration authorities when he induced them to let him off the ship on the basis of the usual papers presented by bona fide alien seamen; and he was not 'a bona fide non-immigrant'. No amount of sympathy for an alien who wishes to disassociate himself from a communistic regime in the country of his birth can furnish justification or excuse for disregarding the plain mandate of the statute."

9. The only evidence in the record to support plaintiff's contention of persecution or fear of persecution on the ground of religion is one sentence in a newspaper of September 30, 1955, containing· a report from Trieste, Italy, saying "Those found in possession of rosaries or holy medals

ment would not seem sufficient to sustain the burden imposed on plaintiff under the above-mentioned Section 6, even if the court had to consider the above-quoted language.[10] See Lavdas v. Holland, 3 Cir., 1956, 235 F.2d 955.

B. Possible application of Section 243(h) of the Immigration and Nationality Act, 8 U.S.C.A. § 1253(h).

█ The above-mentioned Section 243(h) authorizes the Attorney General to withhold deportation of an alien "to any country in which in his opinion the alien would be subject to physical persecution." The Attorney General is only required to grant the alien an opportunity to present evidence on the subject of persecution and to consider such evidence. See United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 1953, 206 F.2d 392;[11] Namkung v. Boyd, 9 Cir., 1955, 226 F.2d 385. Cf. Jay v. Boyd, 1956, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242.[12] Plaintiff

---

are punished." This article was not offered in evidence before the Special Inquiry Officer but is attached to the sworn application for stay of deportation dated October 11, 1955, and considered under B below.

10. Plaintiff has not sustained the burden of showing a rational basis for fear of persecution because of his political opinion in opposition to communism due to the Yugoslavian Government's knowledge of his refusal to return to that country in 1945 and of his opposition to the ideas and policies of Marshall Tito. (See pages 3, 4 and 7 of notes of testimony of 1/13/56; see, also, footnote 14.)

11. In that case, the court said, 206 F.2d at pages 394–395: "That section modified the language of the former statute in a manner which shows clearly, we think, that the withholding of deportation in cases where the alien fears persecution rests wholly in the administrative judgment and 'opinion' of the Attorney General or his delegate. The courts may not substitute their judgment for his. Doubtless a court might intervene to stay deportation, if the Attorney General or his delegate should deny the alien any opportunity to present evidence on the subject of persecution or should refuse to consider the evidence presented by the alien. But we see nothing in the statute to suggest that the courts may insist that the Attorney General's opinion be based solely on evidence which is disclosed to the alien. In his official capacity the Attorney General has access to confidential information derived from the State Department or other intelligence services of the Government which may be of great assistance to him in making his decision as to the likelihood of physical persecution of the alien in the country to which he is to be deported. We believe Congress intended the Attorney General to use whatever information he has. To preclude his use of confidential information unless he is willing to disclose it to the alien would defeat this purpose. Moreover, the very nature of the decision he must make concerning what the foreign country is likely to do is a political issue into which the courts should not intrude. As was said in Chicago & Southern Air Lines v. Waterman S. S. Corp., 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568: 'But even if courts could require full disclosure, the very nature of executive decisions as to foreign policy is political, not judicial.' " See, also, United States ex rel. Watts v. Shaughnessy, 2 Cir., 1953, 206 F.2d 616. In the Dolenz and Watts cases, as in this case, an alien illegally in this country had been ordered to be deported to Yugoslavia.

12. The following language of the United States Supreme Court, 351 U.S. at pages 353–356, 357–358 and 360, 76 S.Ct. at pages 924, 925 and 927, of this case seems pertinent:

"That determination is left to the sound discretion of the Attorney General. The statute says that, as to qualified deportable aliens, the Attorney General 'may, in his discretion' suspend deportation. It does not restrict the considerations which may be relied upon or the procedure by which the discretion should be exercised. Although such aliens have been given a right to a discretionary determination on an application for suspension, cf. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, a grant thereof is manifestly not a matter of right under any circumstances, but rather is in all cases a matter of grace. Like probation or suspension of criminal sentence, it 'comes as an act of grace', Escoe v. Zerbst, 295 U.S. 490, 492, 55 S.Ct. 818, 819, 79 L.Ed. 1566, and 'cannot be demanded as a right', Berman v. United States, 302 U.S.

was given a hearing on January 13, 1956, and was represented by able counsel. No evidence of physical persecution [13] in Yugoslavia was placed in the record, even though there is every indication that many United States citizens travel in Yugoslavia each year.[14]

■ In the absence of any evidence (by affidavit or otherwise) that the record of the administrative proceedings filed in this court are not complete or are inaccurate, plaintiff's objection to disposition of the matter on a motion for summary judgment is without merit. Cf. Tsimounis v. Holland, supra, and Lavdas v. Holland, supra, in both of which cases motions for summary judgment were used.[15]

For the foregoing reasons, defendant's motion for summary judgment will be granted.

---

211, 213, 58 S.Ct. 164, 166, 82 L.Ed. 204. And this unfettered discretion of the Attorney General with respect to suspension of deportation is analogous to the Board of Parole's powers to release federal prisoners on parole. Even if we assume that Congress has given to qualified applicants for suspension of deportation a right to offer evidence to the Attorney General in support of their applications, the similarity between the discretionary powers vested in the Attorney General by § 244(a) of the Act on the one hand, and judicial probation power and executive parole power on the other hand, leads to a conclusion that § 244 gives no right to the kind of a hearing on a suspension application which contemplates full disclosure of the considerations entering into a decision. * * *

"As we have already stated, suspension of deportation is not given to deportable aliens as a right, but by congressional direction, it is dispensed according to the unfettered discretion of the Attorney General. In the face of such a combination of factors we are constrained to construe the statute as permitting decisions based upon matters outside the administrative record, at least when such action would be reasonable. * * *

"While an applicant for suspension is, by regulation, entitled to 'submit any evidence in support of his application,' that is merely a provision permitting an evidentiary plea to the discretion of those who are to make the decision." See, also, opinion of Judge Lord in Tsatsaronis v. Holland, D.C., 149 F.Supp. 309.

13. The article referred to in footnote 9 does not mention physical persecution.

14. See letter from Passport Division, Department of State, dated January 14, 1957, and enclosures. The printed booklet sent to those receiving United States Passports contains data on Yugoslavia showing that it is not only the exceptional case which concerns the application for a United States Passport for use in that country. As pointed out in the quotation in footnote 11 above, the Attorney General may well have sources of information unavailable to plaintiff.

15. Cf. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868; Brownell v. We Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225.