**In the Matter of J. F. MULKEY COMPANY, a Michigan corporation, Bankrupt.**

**No. 37536.**

United States District Court
E. D. Michigan, S. D.
Dec. 15, 1960.

George Stone, Detroit, Mich., for trustee.

FREEMAN, District Judge.

This is a petition for review of an order by a Referee in Bankruptcy brought pursuant to 11 U.S.C.A. § 67, sub. c in which the parties have orally stipulated to proceed on the briefs heretofore filed with the Referee.

In essence, the certificate of the Referee shows that the United States filed a claim against the bankrupt estate in the total amount of $43,594.37 for the unpaid balance on a note, unpaid rental under a lease and damages for allegedly missing and damaged machinery.

After the Referee determined that such claim was entitled to priority, the Trustee filed the petition for review now before the Court.

The facts giving rise to the disputed claim as summarized in the certificate of the Referee are that J. F. Mulkey Company, a Michigan corporation, was adjudicated a bankrupt April 2, 1956; that on November 13, 1952, the United States, acting through the Administrator of General Services, entered into an agreement with the bankrupt whereby the latter agreed to purchase certain machinery for the account of the Government, install it in its plant and lease it from the Government at a stipulated rental; that the bankrupt defaulted on its lease payments and thereafter executed a note payable to the General Services Administration for security; that on August 20, 1955, the bankrupt failed to make the payment due on the note and under the rental agreement and that the Government, pursuant to the acceleration clause in the note, declared the unpaid balance due and payable and terminated the lease agreement.

The applicable statutes provide in pertinent part:

11 U.S.C.A. § 104.

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (5) debts owing to any person, including the United States,

who by the laws of the United States in [is] entitled to priority * * *."

31 U.S.C.A. § 191.

"Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied * * *."

On the basis of these facts and statutes, the Referee concluded that the claim of the United States is entitled to priority.

The sole question for review, as stated in the certificate by the Referee is, therefore, "whether rent accruing to the United States, acting by and through the Administrator of the General Services, under an agreement whereby the Government leased machinery, tools and equipment to the bankrupt, or a note given by the bankrupt to reflect said rental obligation, is entitled to priority of payment under Section 64(a)(5) of the Bankruptcy Act."

The Trustee argues that 31 U.S.C.A. § 191, requiring that "debts due to the United States shall be first satisfied", is inapplicable to debts arising out of transactions governed by the Defense Production Act, 50 U.S.C.A.Appendix, §§ 2061–2166, inclusive. In other words, it is the contention of the Trustee that 31 U.S.C.A. § 191 "is impliedly amended by the Defense Production Act so as to exclude such debts from the scope of that section."

The narrow question before the court is, therefore, whether the Defense Production Act expressly or by implication abrogates the application of 31 U.S.C.A. § 191 to debts arising out of transactions governed by such Act.

In support of his contention, the Trustee advances three arguments which the court will take up in the order stated:

1. There is an express or implied inconsistency between the Defense Production Act and the general priority statute.

2. The general priority statute is repugnant to the purpose of the Defense Production Act.

3. The general priority statute must be narrowly construed.

The Defense Production Act of 1950, 50 U.S.C.A.Appendix, §§ 2061-2166, inclusive, consists of the following 7 titles:

Title I –    Priorities and Allocations.
Title II –   Authority to Requisition and Condemn.
Title III –  Expansion of Productive Capacity and Supply.
Title IV –   Price and Wage Stabilization.
Title V –    Settlement of Labor Disputes.
Title VI –   Control of Real Estate Credit.
Title VII –  General Provisions.

The claim in dispute arises out of a transaction under Title III, Section 2093 (e):

*"Installation of equipment in industrial facilities.*

"(e) When in his judgment it will aid the national defense, the President is authorized to install additional equipment, facilities, processes or improvements to plants, factories, and other industrial facilities owned by the United States Government, and to install government-owned equipment in plants, factories, and other industrial facilities owned by private persons."

Neither this section nor any other section in Title III or, for that matter, in any other Title of the Act expressly deals with the general priority statute, 31 U.S.C.A. § 191.

The argument of an implied waiver of the general priority statute by the Defense Production Act becomes greatly weakened by the fact that in several sections of such Act, the applicability of certain laws is expressly waived, while no mention is made of the general priority statute, 31 U.S.C.A. § 191. Comparing subsection (e) of Section 2093 with the other subsections, it appears, for example, that subsections (a) and (b) authorize the President to purchase strategic materials without regard to the limitations of existing law. Subsection (c) authorizes the President to make subsidy payments "without regard to the limitations of existing law", while subsections (d) and (e) have no comparable provisions. Other sections of the Act make provision for the exemption from the anti-trust laws, the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., and general contract law (Sections 2158, 2159 and 2091, respectively). Congress having specifically provided for the exemption of certain laws in the Defense Production Act, this court cannot imply a waiver of the applicability of 31 U.S.C.A. § 191 unless a very clear repugnancy exists between the Act and such statute.

The Trustee failed to point out any such repugnancy. It appears, on the contrary, that the provisions and the purpose of the Defense Production Act in no way conflict with 31 U.S.C.A. § 191. The section of the Act giving rise to the present claim permits the President to lease Government-owned equipment to private industrial firms. Such a loan would, of course, bring about a creditor-debtor relationship. There is no indication in the Act, however, that this relationship was to be governed by laws other than those existing at the time of the passage of the Act. The Act does *not*, for example, provide for any special security for the loan or for rental payments in an amount which would indicate that Congress intended to change the normal risks carried by the parties or their rights under existing law.

As pointed out by the Government, the argument of the Trustee that 31 U.S.C.A. § 191 is repugnant to the general purpose of the Defense Production Act was effectively answered by the U. S. Supreme Court in United States v. Emory, 1941, 314 U.S. 423, 62 S.Ct. 317, 322, 86 L.Ed. 315:

"Consequently, the argument against the application of § 3466 is reduced to this: Private persons in general are reluctant to extend credit when they know that in the event of the borrower's insolvency the

claims of the United States will receive priority, and this circumstance is particularly undesirable in times of economic stress. In the first place, whatever may be the merits of the contention, it should be addressed to Congress and not to this Court. In the second place, the argument proves too much. If it is sound as applied to this kind of a claim of the United States, it is equally sound as applied to all claims as to which the United States asserts priority under § 3466."

See, also, Small Business Administration v. McClellan, 81 S.Ct. 191.

The court cannot find any substance in the third argument advanced by the Trustee to the effect that certain U. S. Supreme Court cases indicate a trend towards a narrow construction of 31 U.S.C.A. § 191, the general priority statute. Specifically, it is the claim of the Trustee that this section was enacted to assure the public revenue and therefore should not be applied to situations not involving revenue in a strict sense. Although the Trustee has cited several isolated statements by the U. S. Supreme Court in support of his contention that the purpose of Section 191 of Title 31 was "to secure adequate public revenues to sustain the public burden", it appears that there is just as much authority for the proposition that 31 U.S.C.A. § 191 should be "construed liberally in order to effectuate that purpose" (United States v. Emory, supra, 314 U.S. at page 426, 62 S.Ct. at page 319). That the applicability of Section 191 cannot be lightly waived aside was forcefully stated by the U. S. Supreme Court in the Small Business Administration case, supra (quoting with approval from the Emory case, supra):

"Only the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466." [81 S.Ct. 196]

In support of his arguments, the Trustee has cited several cases, the most important ones of which are United States v. Emory, supra; United States v. Guaranty Trust Co. of New York, 1930, 280 U.S. 478, 50 S.Ct. 212, 74 L.Ed. 556; Mellon v. Michigan Trust Co. 1926, 271 U.S. 236, 46 S.Ct. 511, 70 L.Ed. 924; and Cook County National Bank v. United States, 1883, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537. None of these cases support the position taken by the Trustee. In the Emory case, for example, the Supreme Court held that the National Housing Act in no way interfered with the applicability of Section 3466 of the Revised Statutes of the United States (31 U.S.C.A. § 191). In that case, the U. S. Supreme Court also analyzed and distinguished the Cook County and Guaranty Trust Company cases, supra, as follows:

"Neither Cook County National Bank v. United States, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537, nor United States v. Guaranty Trust Co., 280 U.S. 478, 50 S.Ct. 212, 74 L.Ed. 556, requires a different conclusion. In the former case, the United States was denied its § 3466 priority in connection with a claim against a national bank for the amount of certain funds of the United States deposited with it. The decision was based on two grounds. First, the National Banking Act [12 U.S.C.A. § 21 et seq.] undertook to provide a complete system for the establishment and government of banks, and it included specific provisions concerning the distribution of the assets of insolvent banks which were plainly inconsistent with the granting of priority to general claims of the United States. Second, the National Banking Act expressly authorized the Secretary of the Treasury to require national banks accepting deposits of federal funds to give satisfactory security; it was held to be fairly inferable that Congress intended the United States to look to this provision rather than to § 3466 for protection.

"The claims which were denied priority in the Guaranty Trust case

arose under Title II of the Transportation Act of 1920 [49 U.S.C.A. §§ 72 et seq., 141]. That Act provided for the funding of debts to the United States which the railroads had contracted during the period of wartime control, and also provided for new loans to the railroads. In holding § 3466 inapplicable to the collection of these loans the Court emphasized that the basic purpose of the Act was to promote the general credit status of the railroads, that the railroads were required to furnish adequate security for the payment of both the old and new loans, and that the interest rate of 6%, on one class of loans was 'much greater than that which ordinarily accompanies even a business loan carrying such assurance of repayment as would have resulted from an application of the priority rule.' 280 U.S. at page 486, 50 S.Ct. at page 214, 74 L.Ed. 556. These factors persuaded the Court that Congress had intended to exclude these loans from the scope of § 3466."

The Mellon case, supra, clearly is not in point since Section 10 of the Federal Control Act, 40 Stat. 456, in issue there expressly provided:

"In any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government."

In the instant case, none of the circumstances found in the Cook County and Guaranty Trust Co. cases, supra, are present. As already stated, the Defense Production Act simply gives the President authority to facilitate the production of defense materials by various means specified in such Act. The Act does not, however, expressly or by implication affect the resulting legal relationship between the United States and private persons or take away the priority right of the U. S. Government established by 31 U.S.C.A. § 191.

The court concludes that the claim of the U. S. Government is entitled to priority and that the order of the Referee allowing such claim was correct.

The order of the Referee is, therefore, affirmed.