MATTER OF DIAZ

In DEPORTATION Proceedings

A-12386631

*Decided by Board March 20, 1963*

Respondent, a native and national of the Dominican Republic, has not established that he would be subject to physical persecution within the meaning of section 243(h) of the Immigration and Nationality Act by claiming possible physical injury, incurred as an innocent bystander, incident to uncontrolled mob violence in the Dominican Republic.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Visitor remained longer.

The record establishes respondent is deportable as charged in the order to show cause. He remained in this country after the authorized time of his visit expired on December 10, 1961. The special inquiry officer granted him the privilege of voluntary departure to be replaced by deportation to the Dominican Republic, the country of his birth and nationality, if he fails to comply with the conditions governing his voluntary departure. Respondent did not designate a country to which he would want to be sent if deported. He maintains he will be physically persecuted if returned to the Dominican Republic and appeals from the portion of the special inquiry officer's decision denying him the benefits of section 243(h) of the Immigration and Nationality Act.

Respondent's contentions differ substantially from those generally raised in proceedings under section 243(h). He does not allege the Dominican authorities would physically persecute him because of any opposition on his part to the present government or any past activities. Counsel for respondent asserts the special inquiry officer erred in limiting physical persecution under the statute to acts inflicted, or sanctioned, by governmental authorities. He argues that the statutory meaning of the term "physical persecution" includes bodily harm at the hands of the populace (or certain elements thereof) where the gov-

199

·ernment, although not sanctioning such act, is unable to control the situation.

Respondent's evidence consists almost entirely of testimony of two witnesses and factual material from newspapers and magazines published either in this country or the Dominican Republic. Primarily, it reports instances of mob violence occurring in Santo Domingo over the past several months and points to the elements contributing to the unrest. None of this evidence relates directly and specifically to respondent.

As we perceive counsel's argument it comprises at least three distinct situations. A mob or organized group in the Dominican Republic may attack a person known to have been connected officially or unofficially with the Trujillo regime and suspected, with good reason, of participation in the dictatorship's excesses, or known by the mob or group as otherwise opposed to its interests. The second situation also results in intentional physical harm, but there the mob or group erroneously identifies the person as inimical. Respondent's witness, Armando Luna, underwent such an experience. In either of the foregoing situations the attacker (as happened to the witness, Luna) may enlist the unwitting aid of the authorities through false accusations. In the third situation a completely innocent bystander may be inadvertently injured during a riot or other lawless and violent activity caused by political unrest.

As the Service's representative at oral argument points out, counsel's historical examples of nongovernmental persecution relate to particular groups—the early Christians, the Jews in Russia, and the nobility during the French revolution. The dictionary definition referred to in respondent's brief also suggests the group or class concept.[1] Respondent, however, disclaims membership in any class or group which would render him particularly liable to harassment. Thus we do not have before us the situation in which a mob or group might attack a person because of his past or present political activities. Accordingly, we do not rule whether the statute contemplates that situation.[2]

---

[1] ". . . Third Edition of Webster's New International Dictionary issued in 1961, which is quoted as follows: '1a The Act or practice of persecuting as (1) the infliction of sufferings, harm or death on those who differ (as in origin, religion or social outlook) in a way regarded as offensive or meriting extirpation; * * * b: a campaign having for its object the subjugation or extirpation of the adherents of a religion or way of life (pogroms in Russia)'." Respondent's brief, p. 2.

[2] The point which counsel raises has been at least twice before Federal courts of appeals. In each case a group of Communists—acting without the government's authority or approval—allegedly would harass the individual in question

Footnote continued on following page.

Counsel for respondent does not clearly distinguish the variations of what we have assigned as his second situation. Under that situation the attackers may simply mistakenly identify the victim. On the other hand, the attackers may properly identify the victim, but act on the basis of motives unrelated to those avowed. There may be only a single attack or two or more. These possibilities suggest many ramifications in the broader aspects of the question whether physical injury arising under this second situation might come within the statutory concept of physical persecution.

Physical persecution for purposes of the statute has been held generally to be based upon religious, political, or racial grounds.[3] There is some indication that the term should not be so restricted.[4] We limit our inquiry at this point, however, to circumstances in the second situation, reasonably derived from the record, which if counsel's thesis is correct might satisfy the requirements of the statute. Within this scope any intentionally inflicted physical harm respondent might suffer could result only from a completely mistaken identification of him as a supporter of Trujillo or as otherwise opposed to the political interests of the mob or fraction. Nothing in respondent's testimony

---

because of his political convictions. In *Lavdas* v. *Holland*, 235 F.2d 955 (C.A. 3, 1956), the court ruled there was insufficient basis for the petitioner's belief that if he returned to his small community in Greece, Communists there, who in no way represented the governmental authorities, would physically harm him. The court for this reason did not decide nor comment upon whether fear of persecution by secretly and illegally operating communist terrorists in the petitioner's homeland might satisfy the requirements of the statute—section 4 of the Displaced Persons Act, 50 U.S.C. App. section 1953.

In *U.S. ex rel. Cantisani* v. *Holton*, 248 F.2d 737 (C.A. 7, 1957) cert. den. 356 U.S. 932 (1958) (referred to by the special inquiry officer) the petitioner declared he would be subject to persecution and abuse from communistic elements in his village in Italy. The court in upholding the administrative denial of relief under section 243(h) of the Immigration and Nationality Act (8 U.S.C. 1253(h)) gave no indication whether abuse by nonofficial elements in the population could constitute physical persecution for purposes of that statutory provision. On that subject the court pointed out only that there was no proof the authorities in the village, admittedly noncommunist, could not protect the petitioner.

A district court, however, has considered that section 6 of the Refugee Relief Act of 1953 as amended (50 U.S.C. App. section 1971d) did not require "persecution or fear of persecution" to be by the *de jure* or *de facto* government of the foreign country. The court ruled that the petitioners should have been allowed to submit evidence that they feared persecution from certain communist elements in Italy. *D'Antonio* v. *Shaughnessy*, 139 F. Supp. 719 (S.D. N.Y. 1956).

[3] *Blazina* v. *Bouchard*, 286 F.2d 507 (C.A. 3, 1961), cert. den. 366 U.S. 950 (1961) ; *Matter of Kale*, A-9555532, 4/23/58, discussed in *Dombrovskis* v. *Esperdy*, 195 F. Supp. 488 (S.D. N.Y. 1961) ; Gordon and Rosenfield, *Immigration Law and Procedure*, 597 (1962 Supp.).

[4] Wasserman, Book Review, 28 Fordham L. Rev. 860 (1959–1960).

provides a basis for believing that he might be denounced on political grounds but for purely personal, or other irrelevant, reasons. Apart from whether the injuries suffered by the witness Luna constitute physical persecution within the meaning of the statute, respondent has not connected his circumstances to those of Luna.

At oral argument counsel for respondent, in an attempt to counter the Service representative's suggestion that physical persecution contemplates action aimed against a member, or members, of a particular group, suggested that mobs in the Dominican Republic might identify respondent and his compatriots in the other similar cases before us as former supporters of Trujillo. He noted they are from the middle class, have traveled to the United States, and would be distinguishable in appearance from the mobs. We do not believe, however, that the mobs would seek out an individual on the streets of Santo Domingo simply because of his middle- or upper-class appearance.

Moreover, there are obvious interpretive difficulties in holding that physical persecution for the purposes of section 243 (h) includes physical injury due to mistake. Logically, such an occurrence appears further removed from the ordinary concept of persecution than what befell witness Luna. Practically, in only highly unusual circumstances could the opinion required by the statute be reached. Additionally the fewer and less related any possibilities of injury might be the more difficult a holding of likelihood of physical persecution would become.

Therefore, even if respondent were to suffer physical injury because a mob or group in the Dominican Republic mistakenly identified him as a proper object of its wrath, in all probability the circumstances could not reasonably be considered physical persecution for purposes of the statute. In addition, respondent has not shown that any such fate awaits him in his native land. Under any of the circumstances of the second situation which might be relevant to respondent's case, he is not entitled to the benefits of section 243 (h). We do not rule on the legal effect for the purposes of section 243 (h) of circumstances in general under that situation.

We determine therefore that respondent's case rests squarely upon the third situation.[5] Respondent says that it would be risky for him, or any other Dominican here, to return to the Dominican Republic under present conditions. The provisional government, he contends— although desiring to maintain law and order—is unable to control effectively outbreaks of mob violence arising from the general political

---

[5] Subsequent to oral argument in respondent's case, his counsel argued a group of similar cases in which counsel's contentions relate solely to what we characterize as the third situation.

unrest which has followed Trujillo's assassination. He argues that any innocent bystander may be injured or killed.

Narrowly, therefore, the issue before us is whether physical harm befalling an innocent bystander during a lawless and riotous demonstration by a mob might constitute physical persecution within the meaning of section 243(h).

We hold section 243(h) does not cover injuries which may befall anyone who happens to be in the vicinity of an outbreak of mob violence, even though the mob is aroused by factors commonly associated with persecution—racial, religious, or political differences. The statute is designed to benefit a particular class of persons, not any national of a country which is undergoing a period of upheaval accompanied by violence. Respondent is attempting to equate physical injury arising out of political discord with physical persecution. They are not necessarily the same.

To hold that accidental bodily harm resulting from an anarchical or otherwise dangerous internal political situation does not come within the purview of section 243(h) is not to deny a remedy to individuals who face such situations. Deportation to troubled areas may be stayed by the Service as a matter of policy during an emergency irrespective of the probability of physical persecution, just as official temporary travel bans to certain geographic areas are often imposed.[6] Nothing which we say here should be construed as a recommendation either for or against granting such an administrative stay of deportation to respondent. We have no jurisdiction over a stay of this type.[7]

Moreover this appeal brings before us matters not suited to adjudicative processes. Respondent relies upon current events, but the events of record are no longer current. The decision must necessarily disregard facts which occurred contemporaneously with, or immediately prior to, the hearing and consider facts which have arisen subsequently. Counsel's own argument illustrates the difficulty. His brief argues that deportation should be stayed at least until the elections promised for December 20, 1962. At oral argument he suggested that action leading toward deportation should be deferred until at least the officials elected in the December elections take office on February 27th

---

[6] Since it is possible nationals of a country might incur risks during a period of violent political discord which casual visitors would not, the absence of a general ban on travel to the Dominican Republic does not weaken counsel's argument in its entirety. But the freedom of travel to the Dominican Republic does affect adversely counsel's contention that respondent faces serious danger of personal injury as an innocent bystander.

[7] Counsel for respondent indicates that the Service had earlier refrained from deporting Dominican nationals to their homeland. A change in that policy brought on these proceedings.

of this year. In arguing similar cases on March 4, 1963 counsel said in effect that it is too early to determine conditions under the new government.

The changing political scene in the Dominican Republic necessitates these shifts in argument; the shifting basis for decision demonstrates that the grounds for a stay of deportation urged by respondent fall properly within the more flexible sphere of purely administrative action rather than the procedures imposed by the regulations under the statutory provision. The statute and regulations contemplate that the conditions relied upon be sufficiently static to enable, by a process of adjudication subject to review, formation of a considered opinion of the likelihood of physical persecution.

Yet the factual record here also supplies ample grounds for denying respondent's application for a stay of deportation because of anticipated physical persecution. Looking at conditions in the Dominican Republic either at the time of the hearing or at the present time, we find little likelihood that, if respondent returned there, his allegations would be borne out. The situation in the Dominican Republican is still developing. Nevertheless, in addition to being insufficiently connected to respondent, assertions in the record that the present democratic trend may terminate are speculative.

More importantly, however, respondent's application fails as a matter of law. Counsel for respondent has been afforded unlimited opportunity to develop his thesis. The attorneys who represented the Service at the hearing in this and related cases have objected to certain testimony and to submission of some of the documentary evidence as not germane to the issue of physical persecution. The special inquiry officers—although often noting the merit of the objection—have accepted such evidence into the record in order not to hamper the respondents' presentation of their position. We have reviewed counsel's contentions sympathetically in order to give these respondents the consideration of everything in their favor—over and above what we might perceive as deficiencies in their actual proof. At the minimum, however, the benefits of section 243(h) may be extended only to one who faces being singled out for physical suffering imposed on the basis of some belief or activity which the oppressor seeks to overcome or punish.[8] The assertions by and in behalf of respondent and his compatriots relating to the third situation, which alone find any measure of support in the record, do not bring them within this standard. We need not decide here what other requirements may be im-

---

[8] Of course, many situations which would meet these broad criteria would not, on other grounds, constitute "physical persecution."

plicit in the statutory language—particularly whether governmental authorities must inflict or sanction the physical persecution.

We reach the same conclusion as the special inquiry officer, if not completely upon the same grounds. Respondent's evidence and argument, as related to that evidence, do not, in our minds, conform to any reasonable statutory meaning for the term "physical persecution."[9] We shall dismiss the appeal.

**ORDER:** It is ordered that the appeal be and hereby is dismissed.

---

[9] In addition to the record in respondent's case, we have considered the testimony and any additional exhibits in counsel's similar cases currently before us, other material submitted by counsel to the Board, and all of counsel's arguments.